## Martha E. Battenhausen
## v.
## John M. Bullock.

1. Record of deed as notice—Inquiry.—The record of a deed or mortgage is constructive notice to subsequent *bona fide* purchasers or incumbrancers of only what appears on the face of the instrument as recorded. The rule that what is sufficient to put a purchaser upon inquiry is notice of whatever the inquiry would have disclosed, has no application; that rule applies to actual, not constructive notice.

2. Mortgage—Should state amount of debt.—A mortgage describing a note of a certain date, without specifying any amount, is not a valid security as against subsequent purchasers and incumbrancers. Nor is the record of such mortgage constructive notice of any rights of the mortgagee as against a subsequent *bona fide* purchaser.

Appeal from the Circuit Court of Cook county; the Hon. Murray F. Tuley, Judge, presiding. · Opinion filed November 29, 1882.

Messrs. Rosenthal & Pence, for appellant; that the unsupported testimony of a party that he did not execute a deed can not prevail over the official certificate of the officer taking the acknowledgment, cited Kerr v. Russell, 69 Ill. 669; Lickman v. Harding, 65 Ill. 505; Monroe v. Poorman, 62 Ill. 527; Marston v. Brittenham, 66 Ill. 614; Fitzgerald v. Fitzgerald, 100 Ill. 385.

The instrument was not a mortgage: 1 Jones on Mortgages, § 16; 2 Washburn on Real Property, Chap. 16, § 1.

Where the principal thing is without legal operation, the incident also fails: Lucas v. Harris, 20 Ill. 169; Ryan v. Dunlap, 17 Ill. 43.

An instrument which can not operate as a mortgage is a nullity, is not entitled to be recorded, and is not constructive notice of anything if recorded: Schultze v. Houfes, 96 Ill. 335; Houfes v. Schultze, 2 Bradwell, 196; Moore v. Hunter, 1 Gilm. 317; St. John v. Conger, 40 Ill. 536; James v. Morey, 2 Cow. 310; Mesich v. Sunderland, 6 Cal. 315; Kerns v. Savage, 2 Watts, 77; Tilman v. Osmand, 12 Sm. & M. 265; F. & M. Bank v. Bronson, 14 Mich. 369; Gale's ex'rs v. Morris, 29 N. J. Eq. 226; Racouillat v. Rene, 32 Cal. 452; Disque v. Wright, 49 Iowa, 538; White v. Carpenter, 2 Paige, 248.

Omitting to state the amount of the debt makes the mortgage fraudulent as to creditors and purchasers: Met. Bank v. Godfrey, 23 Ill. 603; North v Belden, 13 Conn. 376; Hart, v. Chalker, 14 Conn. 77; Pierce v. Hall, 12 Ky. 209; Pettibone v. Griswold, 4 Conn. 161.

Messrs. SEARLS & COOK, for appellee; that appellant was bound to take notice of the trust deed, and the purchase was subject to it, cited Buchanan v. International Bank, 78 Ill. 500; Shannon v. Hall, 72 Ill. 354; Hall v. Shannon, 85 Ill. 473; King v. McVickar, 3 Sandf. Ch. 193; Oliver v. Piatt 3 How. 333; C. R. I. & P. R. R. Co. v. Kennedy, 70 Ill. 350; Willis v. Henderson, 4 Scam. 13; Merrick v. Wallace, 19 Ill. 486; Morrison v. Kelly, 22 Ill. 610; Morris v. Hogle, 37 Ill. 150; Rupert v. Mark, 15 Ill. 540; 2 Story's Eq. Jur. § 977.

Whatever is sufficient to put a purchaser upon inquiry is notice of whatever the inquiry would disclose: Bent v. Coleman, 87 Ill. 364; U. S. Mortgage Co. v. Gross, 93 Ill. 483; Watt v. Schofield, 76 Ill. 261; 1 Story's Eq. Jur. § 483; 2 White & Tudor's Lead. Cas. 117.

BAILEY, P. J. This case was before this court on appeal at the October term, 1880, at which time a decree in favor of the complainant, foreclosing the deed of trust, was reversed and the cause remanded, for reasons stated in the opinion then filed. See Battenhausen v. Bullock, 8 Bradwell, 312, where the facts of the case as they then appeared, are fully stated. Christian Battenhausen has since died, having previously con-

·veyed the land in controversy to his wife, Martha E. Battenhausen, who was also a defendant to the bill. After her husband's death, Martha E. Battenhausen filed her amended and supplemental answer, setting up the conveyance to her, denying the material averments of the bill, alleging the purchase of said land by her husband from Runyan, in good faith and without actual or constructive notice of the deed of trust, for the sum of $20,000, claiming that the deed of trust was not a lien on said land as against the title obtained by said purchase, and affirming the validity of the release of the deed of trust purporting to have been executed by said trustee. The cause being again heard on the pleadings and proofs, a decree was rendered setting aside the release, holding the deed of trust to be a lien on said land superior to the title of Mrs. Battenhausen, and decreeing a foreclosure and sale of said lands for $10,058.33, the amount appearing to be due upon the note claimed to be secured by said deed of trust. From this decree Mrs. Battenhausen has appealed to this court.

At the hearing evidence was introduced tending to show that the release was a forgery. That instrument purports to have been acknowledged before an officer authorized by law to take acknowledgments of conveyances of real estate, and it is insisted that the evidence bearing upon that issue is insufficient, as against an innocent third party who has paid out his money relying upon the validity of the instrument, to overcome the proof furnished by the certificate of acknowledgment. As we are disposed, however, to place our decision entirely upon another ground, we do not deem it necessary to discuss the question thus raised.

Assuming the invalidity of the release, is the deed of trust a valid lien on said land as against an innocent purchaser, who, after the deed was recorded, obtained title to said land in good faith, and for a valuable and adequate consideration, and with no notice either actual or constructive, except such notice as is to be implied from the record itself?

The evidence shows that when Battenhausen purchased of Runyan, he had no actual notice of the deed of trust, but on

the contrary, was assured by Runyan that the land was clear
of incumbrance, and the conveyance to him was by a war-
ranty deed covenanting against all incumbrances. Runyan
at the time, promised to furnish Battenhausen an abstract of
title, which he failed to do, but a considerable time afterward,
Battenhausen obtained one for himself, which showed the rec-
ord both of the deed of trust and the release, and neither he
nor his wife had any knowledge of any difficulty in respect to
the title to their land, until the filing of the complainant's
bill to foreclose the deed of trust. It also appears that Bat-
tenhausen paid Runyan for the land the sum of $20,000, its
full value, of which sum $4,100 was paid in cash at the date
of the conveyance, and the residue by his notes secured by
mortgage on the land. These notes, Runyan soon afterward
negotiated to innocent indorsees, and the larger part of them
has since been paid by Battenhausen or his wife.

The deed of trust contains no statement of the amount of
the indebtedness thereby sought to be secured, nor does it con-
tain any language from which the amount can be ascertained
or inferred. After naming the parties, the deed recites as fol-
lows: " Whereas said Eben F. Runyan has made his prom-
issory note, bearing date the 11th day of June, A. D. 1872,
payable to the order of John M. Bullock, five years after date,
with interest at the rate of ten per cent. per annum: Now,
therefore," etc. In a subsequent portion of the deed it is pro-
vided, " that in case of default in the payment of the said
promissory note and interest, or either or any part thereof,"
etc., the trustee might advertise and sell the lands, etc., " and
out of the proceeds of such sale, after first paying all costs of
advertising and sale, commissions, and all other expenses of
the trust and interest due on said note, according to the tenor
and effect thereof, rendering the overplus (if any), unto said
party of the first part," etc. There is also a covenant, " that
the party of the first part will pay or cause to be paid the said
indebtedness when due and payable, and until said indebted-
ness is fully paid, or said premises are sold by virtue hereof,"
etc. The foregoing comprises all the language of the trust
deed referring either directly or remotely to the note or the
indebtedness secured.

The bill alleges that the deed of trust was given to secure Runyan's promissory note, dated June 11, 1872, for $6,000, payable five years after date, with interest at the rate of ten per cent. per annum, payable semi-annually; and on the hearing the complainant produced a note of that description, and gave oral evidence tending to show that said note was executed simultaneously with the deed of trust, and was the note intended to be secured thereby.

Let us first consider how far the record of the deed of trust was constructive notice to Battenhausen, at the time he purchased, of the indebtedness evidenced by said note. The rule seems to be well supported by authority that the record of a deed or mortgage is constructive notice to subsequent *bona fide* purchasers or incumbrancers of only what appears on the face of the instrument as recorded. In Lally v. Holland, 1 Swan. (Tenn.) 396, there was an error in a deed of trust, duly recorded in the christian name of the grantor, and in the description of the property. The court, in holding the record of the deed to be no notice to a subsequent *bona fide* purchaser, say: "If, upon the face of the deed as registered, the property purporting to be conveyed be not truly and properly described, the act of registration is treated as a mere nullity, and of course can not affect the subsequent purchaser with constructive notice. The object of registration is to give notice to creditors and subsequent purchasers. They have the right to presume that the instrument, as registered, speaks the truth, and expresses fully the true intention of the parties. They can not be expected or required to look beyond the face of the paper as it appears on the register's books; nor can they be charged with notice of anything beyond."

In Frost v. Beekman, 1 John. Ch. 288, the registry of a mortgage given to secure $3,000, but by a mistake of the clerk registered for $300, was held to be notice to a subsequent purchaser, to the extent only of the sum expressed in the registry. Chancellor Kent in considering the construction of the Registry Act said: "The true construction of the act appears to be that the registry is notice of its contents, and no more, and that the purchaser is not to be charged with notice

of the contents of the mortgage, any further than may be contained in the registry. * * * The statute did not mean to put the party upon further inquiry. The registry was intended to contain within itself all the knowledge of the mortgage requisite for the purchaser's safety."

In Gatewood v. House, 65 Mo. 663, a deed described the lands intended to be conveyed merely by reference to certain certificates of entry at a United States land office, such certificates themselves not being recorded. The record of this deed was held to be no notice to subsequent purchasers. In the opinion the court say: "The description was undoubtedly good enough between the parties to the deed, but it is wholly insufficient as notice to third persons. To constitute the record of a deed notice to subsequent purchasers, the description contained in the deed should be such as would enable such purchasers to identify the land by name, location, monuments, courses and distances, or numbers, or the deed should refer to some other instrument lawfully of record which does contain such means of identification."

In Brydon v. Campbell, 40 Md. 331, a deed conveying an undivided four tenths of certain property, was recorded by mistake of the clerk as conveying an undivided fourteenth of said property, and it was held to be constructive notice only of what the record disclosed. As was said by the Supreme Court of Ohio, in lessees of Jennings v. Wood, " The reason a party is chargeable with constructive notice is that by an examination of the record he will have actual notice." And therefore, as said by the Supreme Court of Texas in Taylor v. Harrison, 47 Texas, 454, the record of instruments, when duly proven and acknowledged, " operates as constructive notice to creditors and subsequent purchasers, of such facts as they would have learned from the record if examined." See also McLouth v. Hurt, 51 Texas, 115; Baldwin v. Marshall, 2 Humph. (Tenn.) 116; Adams v. Daunis, 29 La. An. 315; Nelson v. Wade, 21 Iowa, 49; Gale's ex'rs v. Morris, 29 N. J. Eq. 226; Disque v. Wright, 49 Iowa, 540; Miller v. Ware, 31 Id. 524.

It follows from the foregoing authorities that the construct-

ive notice to Battenhausen of the complainant's rights, arising from the record of the deed of trust, was no more extensive than the facts stated in the record itself. The rule that what is sufficient to put a purchaser upon inquiry is notice of whatever the inquiry would have disclosed, has no application. That rule applies to actual and not to constructive notice. If Battenhausen had examined the record, he would have failed to obtain notice of any indebtedness for $6,000, or any other sum. He would have learned of a conveyance by way of mortgage, with no indebtedness to be secured, and therefore nugatory and unavailing. The record, then, was constructive notice to Battenhausen of no rights in the complainant.

But there is another rule of law applicable to mortgages, that when the mortgage is given for an ascertained debt, the amount of the debt should be stated. It has accordingly been held that a mortgage given to secure an existing debt of a fixed amount, but which is described in the condition of the mortgage only as a note due from the mortgagor to the mortgagee, of a certain date, etc., without specifying the amount, is not a valid security as against subsequent purchasers and incumbrancers. This rule is derived from no specific provision of the registry law, but the spirit of the registry system requires that the record should disclose with as much certainty as the nature of the case will admit the real state of the incumbrance. 1 Jones on Mortgages, § 344.

This precise question arose in the case of Pierce v. Hall, 12 Bush, 209. That was a controversy between a mortgagee and subsequent lien creditors, and, in the condition of the mortgage, the note intended to be secured was described in all essential particulars precisely as in the present case. The recording statute of Kentucky under which the decision was made, was substantially like ours, and the court, in holding that the mortgage must be postponed to the rights of the lien creditors, say: "The spirit of our statutes upon this subject requires not only that such conveyances shall be lodged for record, but that they shall show for themselves, and without the aid of extrinsic evidence to be obtained by inquiry, the nature of the lien, and with a reasonable degree of certainty

the amount of the debts they are intended to secure. If the amount be ascertained, as in this case, it ought to be stated. If it be not ascertained, then such descriptive facts as are within the knowledge of the parties, and as tend to put one interested in the inquiry upon the track leading to a discovery, ought to be set out. Unless this is done, the public record does not show the state of the title, and room is left for the substitution of fictitious and fraudulent claims, and the prime object of the recording system is subject to be defeated."

Hart v. Chalker, 14 Conn. 77, was a case between a senior and a junior mortgagee, where the indebtedness intended to be secured by the senior mortgage was described substantially as in the present case. The court, in holding that such mortgage was not a valid security as against subsequent incumbrancers, lay down the same rule as to what constitutes a sufficient description in a mortgage of the indebtedness secured, and in the course of the opinion say: " The note, so far as we are informed, was before the parties, at the time the deed was drawn, and yet there was an entire omission as to the most important fact respecting it—its amount. Whether it was $100, or $1,000, no one can tell.    *    *    *    *· Whether the omission was owing to design or accident, we are not informed. In either case, the effect would be the same, and the public would not have that information which it was intended should be given, and which, if generally neglected, would make our records of little value. Indeed, if such a general description is good, it would seem as if it were enough to say, this mortgage is intended to secure any debt due; for there would be little more danger in that case of substituting fictitious debts, than in this, where the sum is omitted; for he who would substitute fictitious debts under that general description, would have very little additional restraint from the fact that the date and time were given.    *    *    *    * There doubtless may be omissions in the description which would not invalidate it, but this is one all-important to the subsequent vendee or mortgagee, for which no reason at all is assigned. Should such a description be

Battenhausen v. Bullock.

held sufficient, our records would hereafter convey but little information as to the real state of the incumbrances on real estate. Instead of that definite and precise intelligence they are designed to convey, general and loose descriptions would be given, and the inquirer would have to depend upon the good faith of the parties rather than upon the public records."

The case of Hart v. Chalker only follows a number of earlier cases in Connecticut to the same effect, and although in later cases in the same State the degree of particularity in the description of the indebtedness necessary to the validity of the mortgage is considered, and some distinctions pointed out, the rule laid down in the case above cited is still recognized and enforced in that State. Thus in the late case of Stearns v. Portor, 46 Conn. 313, it is said: "The law is well established in this State, that a mortgage must describe the indebtedness truly, or it will not prevail against creditors or *bona fide* purchasers for a valuable consideration without notice."

The same rule, and in very much the same language above quoted, is laid down in this State in Metropolitan Bank v. Godfrey, 23 Ill. 579. The court there say: "The spirit of our recording system requires that the record of a mortgage should disclose, with as much certainty as the nature of the case will admit, the real state of the incumbrance. If the mortgage is given to secure an ascertained debt, the amount of that debt should be stated; and if it is intended to secure a debt not ascertained, such data should be given respecting it as will put any one interested in the inquiry, upon the track leading to discovery. If given to secure an existing, or a future liability, the foundation of such liability should be set forth"; citing Hart v. Chalker, *supra*.

We are aware that Mr. Jones, in his valuable treatise on the Law of Mortgages, after laying down the rule as above set forth, states that the cases which require this degree of strictness in describing the indebtedness are not supported by the weight of authority. We have examined the cases cited by the learned author as the basis of this statement in his text, and are of the opinion that they do not warrant the conclusion at which he arrives. But however that may be, so long as the

doctrine above stated has received the express sanction of our own Supreme Court, it is our duty to adopt and enforce it.

It follows that Battenhausen took title to the land in question, free from the lien of the deed of trust sought to be foreclosed in this case, and that, as against the present owner of the fee, he has no equities. The decree will therefore be reversed and the bill dismissed for want of equity, at the costs of the complainant.

Decree reversed.