JOHN M. BULLOCK

*v.*

MARTHA E. BATTENHOUSEN.

*Filed at Ottawa November 20, 1883.*

1. RECORDING LAW—*record of deed of trust referring to note without giving amount, no notice of amount.* Under the registry laws of this State the record of a trust deed which simply recites that the grantor had, on the same date of the deed, made his promissory note, payable to, etc., without giving its amount, will not charge subsequent *bona fide* purchasers without actual notice with knowledge of the amount for which the note was given.

2. MORTGAGE—*should disclose the amount of debt secured.* If a mortgage is given to secure an ascertained debt, the amount of that debt should be stated; and if it is intended to secure a debt not ascertained, such' data should be given respecting it as will put any one interested in the inquiry upon the track leading to a discovery. If it is given to secure an existing or a future liability, the foundation of such liability should be set forth.

3. The policy, though not the letter, of our statutes, requires in all cases a statement upon the record of the amount secured by a mortgage or deed of trust.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

On the 11th of June, 1872, Eben F. Runyan made and delivered to John M. Bullock his promissory note for $6000, payable five years after date, with interest thereon at ten per cent per annum, payable semi-annually, and at the same date Runyan and wife executed and delivered to Bullock a deed of trust conveying the east half of section 28, and the east half of the north-east quarter of section 33, town 36 north, range 12 east, third principal meridian, in Cook county, to John R. Bullock, trustee, upon the following trust, that is to say:

"Whereas, said Eben F. Runyan has made his promissory note, bearing date the 11th day of June, 1872, payable to the order of John M. Bullock, five years after date, with interest at the rate of ten per cent per annum, payable semi-annually, * * * in case of default in the payment of the said promissory note and interest, or either or any part thereof, * * * on the application of the legal holder of said note, it shall be lawful for the said party of the second part, his heirs, assigns or successors in trust, to enter into and upon the premises hereby granted, * * * and to sell and dispose of the said premises, * * * and out of the proceeds of such sale, after first paying all costs of advertising and sale, commissions, and all other expenses of this trust, and interest due on said note, according to the tenor and effect thereof, rendering the overplus (if any) unto the said party of the first part, his legal representatives or assigns, on reasonable request. * * * And it is stipulated and agreed that in case of default in the payment of said promissory note or interest, as aforesaid, of a breach in any of the covenants or agreements herein mentioned, the whole of said principal of said promissory note, and the interest to the time of sale, shall, at the option of the legal holder of said note, become due and payable, and the said premises may be sold as if the said indebtedness had matured."

This instrument was filed for record in the proper office on the 21st of June, 1872, and duly recorded on the same day.

Payments appear to have been made on the promissory note by Runyan, as follows:   June 11, 1873, $600, as interest;  July 1, 1875, $1200, as interest.

The following instrument was duly filed for record in the proper office on the 12th of September, 1874, and recorded on the 22d day of September, 1874, to-wit:

"Know all men by these presents, that John R. Bullock, of the city of Waukegan, in the county of Lake, and State of Illinois, for and in consideration of one dollar, and for other good and valuable considerations, the receipt whereof is hereby confessed, do hereby grant, bargain, remise, convey, release and quitclaim unto Eben F. Runyan, of the city of Chicago, in the county of Cook, and State of Illinois, all the right, title, interest, claim or demand whatsoever I may have acquired in, through or by a certain trust bearing date the 11th day of June, A. D. 1872, and recorded in the recorder's office of Cook county, in the State of Illinois, (in book 86 of "Records," page 483,) to the premises therein described as follows, to-wit:   The east half of section twenty-eight (28), and the east half of the north-east quarter of section thirty-three (33), in township number thirty-six (36) north, range twelve (12) east of the third principal meridian, in the county of Cook, in the State of Illinois, together with all the appurtenances and privileges thereunto belonging or appertaining.

"Witness my hand and seal this 7th day of September, A. D. 1874.                JOHN R. BULLOCK, *Trustee.*   [Seal.]"

"STATE OF ILLINOIS, }
    *Cook County.*    } ss.

"I, Frederick S. Baird, a notary public in and for the said county, in the State aforesaid, do hereby certify that John R. Bullock, trustee, personally known to me to be the same person whose name is subscribed to the foregoing instrument,

appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

"Given under my hand and notarial seal this 12th day of September, A. D. 1874.

FREDERICK S. BAIRD,

[Notarial seal.]               *Notary Public.*"

On the 16th of July, 1874, Runyan and wife executed and delivered to Christian Battenhousen a deed for the said east half of section 28, and also for the west half of the northeast quarter of section 33, all in town 36 north, range 12 west, in Cook county. John M. Bullock, on the 30th of August, 1877, filed his bill in chancery in the office of the clerk of the circuit court of Cook county, against Runyan and wife, and Christian Battenhousen, Martha Battenhousen, and others, alleging therein, among other things, that said pretended release was a forgery, the non-payment of the amount due on the promissory note executed to him by Runyan, after deducting certain admitted payments, and that Battenhousen is a purchaser junior to and subordinate to his rights under the deed of trust, and praying that said pretended release of John R. Bullock be set aside, etc.; that said deed of trust be foreclosed, and the premises therein described be sold, etc., for the payment of the amount due on the said promissory note, etc. Christian and Martha Battenhousen answered, denying the forgery of the release of John R. Bullock, alleging they were purchasers for full value, and in good faith believing, as Runyan then assured them, that the premises were free of all incumbrances; that they are Germans, unacquainted with the English language, and relied upon what the records disclosed and Runyan assured them,—that the deed of trust to John R. Bullock, trustee, was released.

Replication was filed, and the cause was heard at the March term, 1880, of the circuit court, on bill, answer, and proofs

then introduced, and the court thereupon decreed that the pretended release of John R. Bullock be set aside, and that the premises be sold for the payment of the amount due to John M. Bullock on the said promissory note.    The Battenhousens appealed from this decree to the Appellate Court for the First District, and that court, at its October term, 1880, reversed the judgment of the circuit court, and remanded the cause for further proceedings.    After the cause was remanded Christian Battenhousen died, and at the October term, 1881, of the circuit court, the death of Christian Battenhousen was suggested, and leave was given to Martha Battenhousen to file an amended and supplemental answer, which she then proceeded to do.    In this answer Martha Battenhousen denied, specifically, all the material allegations of the bill, and charged that the trust deed is of no binding force, validity or effect as a lien upon the premises, and against the defendant, and that it does not secure said indebtedness or said note, and that the same is not now, and never has been, a lien upon said premises for any purpose, against said defendant; that in July, 1874, Christian Battenhousen purchased of Runyan the west half of the north-east quarter of section 33, and the east half of section 28, town 36 north, range 12 east, third principal meridian, for $20,000, and that Runyan executed to him a warranty deed therefor, in which he covenanted that the premises were free from incumbrance; that Battenhousen then paid Runyan $4100 of the purchase money, and executed notes, and mortgage upon the premises, securing deferred payments in one, two, three, four, five, six, seven and eight years, with eight per cent interest, payable annually, which mortgage was then recorded; that at the time of the purchase Runyan represented to Battenhousen that the premises were clear of all incumbrances; that Battenhousen had no actual knowledge or notice of the trust deed, and that the record thereof was not constructive notice of the existence of the same for the purposes claimed in the bill, or for any

purpose, and that said trust deed is insufficient to create a lien upon said premises, as against defendant; that Battenhousen, after said release was filed for record, relying thereon, paid off a large amount of said indebtedness; that $20,000 was an adequate price for said premises; that Runyan disposed of said notes, before due, to parties who now hold them; that on the 5th of April, 1881, Battenhousen conveyed the premises to defendant. To this there was also replication filed, and the cause was again heard at the March term, 1882, of the circuit court, when a decree was again rendered setting aside the release as a forgery, and foreclosing, etc., the trust deed. An appeal was also prosecuted from this decree to the Appellate Court for the First District, and that court, at its October term, 1882, reversed the decree of the circuit court, and refused to remand the cause, and this appeal is prosecuted to reverse that judgment.

Messrs. SEARLS & COOK, for the appellant:

Whatever is sufficient to put a subsequent purchaser on inquiry is notice to him of what such inquiry would lead to the knowledge of the inquirer. 1 Story's Eq. Jur. (12th ed.) sec. 403; 2 White & Tudor's Leading Cases in Equity, part 1, p. 117; *Parkist* v. *Alexander*, 1 Johns. Ch. 394; *Bent* v. *Coleman*, 89 Ill. 364; *United States Mortgage Co.* v. *Gross*, 93 id. 483; *Watt* v. *Schofield*, 76 id. 261; *Buchanan* v. *International Bank*, 78 id. 500; *Chicago, Rock Island and Pacific R. R. Co.* v. *Kennedy*, 70 id. 350; *Merrick* v. *Wallace*, 19 id. 486; *Morrison* v. *Kelley*, 22 id. 610.

It is urged by appellee that the foregoing rule and decisions are inapplicable to a mortgage, as between a mortagee and a purchaser, for value, from the mortgagor having no actual notice; and in this case, as the record does not state the amount in dollars secured by the note, that Battenhousen was not called upon to inquire as to it, and therefore no recovery can be had against him. On the contrary, we urge

that all the description required to be made of the debt in a mortgage is a general one, which will put those interested upon inquiry.   1 Jones on Mortgages, (2d ed.) secs. 343, 70 ; *Youngs* v. *Wilson*, 27 N. Y. 351 ; *Babcock* v. *Lisk*, 57 Ill. 327 ; *Booth* v. *Barnum*, 9 Conn. 286 ; *Griswold* v. *Mathews*, 5 id. 442 ; *Wright* v. *Frost*, 3 id. 146 ; *Crane* v. *Deming*, 7 id. 387 ; *Frink* v. *Branch*, 16 id. 259 ; *Utley* v. *Smith*, 24 id. 290 ; *Lewis* v. *De Forest*, 20 id. 427 ; *North* v. *Belden*, 13 id. 376 ; *Somerworth Savings Bank* v. *Roberts*, 38 N. H. 22 ; *Kellogg* v. *Frazier*, 40 Iowa, 502 ; *Reckilson* v. *Richardson*, 19 Cal. 330 ; *Williams* v. *Moniteau National Bank*, 72 Mo. 292 ; *Hurd* v. *Robinson*, 11 Ohio St. 232 ; *Gill* v. *Pinney*, 12 id. 38 ; *Boody* v. *Davis*, 20 N. H. 140 ; *Bassett* v. *Bassett*, 10 id. 64 ; *Boyd* v. *Parker*, 43 Md. 182 ; *Robinson* v. *Williams*, 22 N. Y. 380 ; *Michigan Ins. Co.* v. *Brown*, 11 Mich. 266 ; *Carnall* v. *Duval*, 2 Kan. 136 ; *Aull* v. *Lee*, 61 Mo. 160 ; *Pike* v. *Collins*, 33 Maine, 38 ; *Hodgen* v. *Charman*, 44 N. H. 572 ; *Clark* v. *Hyman*, 55 Iowa, 15 ; *Brookings* v. *White*, 49 Maine, 479 ; *Vanmeter* v. *Vanmeter*, 3 Gratt. 148 ; *Kramer* v. *Farmers and Mechanics' Bank*, 15 Ohio, 253 ; *Burdett* v. *Clay*, 8 B. Mon. 287 ; *Jones* v. *Berkshire*, 15 Iowa, 248 ; *Paine* v. *Benton*, 32 Wis. 491.

Where the rule is held otherwise it is in consequence of the peculiar language of the registry laws.

Messrs. ROSENTHAL & PENCE, for the appellee :

There are two necessary elements to constitute a mortgage. It must be a conveyance, and that must be as a security. By this mortgage no indebtedness is secured.   The note therein described would read as follows :

"CHICAGO, *June 11, 1872.*

"I promise to pay to the order of John M. Bullock, five years after date, with interest at the rate of ten per cent per annum, payable semi-annually.          E. F. RUNYAN."

The debt secured is the principal thing, and the mortgage the mere incident. If the principal thing is void or inoperative, so will be the incident. *Lucas* v. *Harris*, 20 Ill. 169; *Ryan* v. *Dunlap*, 17 id. 43.

An instrument which can not operate as a mortgage as it stands, is a nullity, and is not entitled to be recorded under our statutes, and is not constructive notice of anything if recorded. *Schultze* v. *Houfes*, 96 Ill. 335; *Houfes* v. *Schultze*, 2 Bradw. 196; *Moore* v. *Hunter*, 1 Gilm. 317; *St. John* v. *Conger*, 40 Ill. 536; *James* v. *Morey*, 2 Cow. 310; *Mesich* v. *Sunderland*, 6 Cal. 315; *Kerns* v. *Savage*, 2 Watts, 77; *Tilmand* v. *Oswand*, 12 S. & M. 265; *Farmers and Merchants' Bank* v. *Bronson*, 14 Mich. 369; *Gales' Exrs.* v. *Morris*, 29 N. J. Eq. 226; *Racoiullat* v. *Rene*, 32 Cal. 452; *Disque* v. *Wright*, 49 Iowa, 538; *White* v. *Carpenter*, 2 Paige, 248; *Lambert* v. *Hall*, 7 N. J. Eq. 439.

It is fraudulent *per se* to give a mortgage for the purpose of securing an ascertained debt without stating the amount thereof in the mortgage.

The spirit of our recording system requires that the record of a mortgage should disclose, with as much certainty as the nature of the case will admit, the real state of the incumbrance. If a mortgage is given to secure an ascertained debt, the amount of such debt should be stated. By omitting to so state the debt the widest door is opened for fraud of every description, and to prevent the same the law declares such a mortgage fraudulent and void as to creditors and subsequent purchasers. *Metropolitan Bank* v. *Godfrey*, 23 Ill. 603; *North* v. *Belden*, 13 Conn. 376; *Hart* v. *Chalker*, 14 id. 77; *Pearce* v. *Hall*, 12 Ky. 209.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We perceive no sufficient reason for disturbing the judgment of the Appellate Court. We concur with that court in holding that under our registry laws the record of this trust

deed does not charge subsequent *bona fide* purchasers without actual notice with knowledge of the amount of the indebtedness of the promissory note set out in the bill. We concur, also, in the main, with the reasoning expressed by that court in its opinion, as reported in 11 Bradwell, 665.

It is true, as contended by counsel for appellant, that in *Metropolitan Bank* v. *Godfrey*, 23 Ill. 603, therein referred to, the question before the court was not as to the sufficiency of a particular description of indebtedness, as it is here, but as to the effect of an absolute deed referring to no indebtedness; but what was there said may be regarded as a reason equally cogent here. The language there was: "The spirit of our recording system requires that the record of a mortgage should disclose, with as much certainty as the nature of the case will admit, the real state of the incumbrance. If a mortgage is given to secure an ascertained debt, the amount of that debt should be stated, and if it is intended to secure a debt not ascertained, such data should be given respecting it as will put any one interested in the inquiry upon the track leading to a discovery. If it is given to secure an existing or a future liability, the foundation of such liability should be set forth. *North* v. *Belden*, 13 Conn. 376; *Hart* v. *Chalker et al.* 14 id. 77."

This is peculiarly pertinent to the facts of the present case, and one of the authorities quoted in support of the language is literally analogous. In *Hart* v. *Chalker*, the condition in the mortgage, which was condemned because of the insufficiency of the description of the debt, ran thus: "The condition of this deed is, that whereas, said William Chalker has this day executed his note of hand to said Hart, dated 10th of May, 1834, on demand, with interest, if said Chalker shall truly and faithfully pay to said Hart the amount of said note, agreeable to the tenor thereof, then this deed to be void, otherwise to remain in full force and effect."

The policy, though not the letter, of our statutes requires, in all cases, a statement upon the record of the amount secured. Thus, in section 11, chapter 30, Rev. Stat. 1874, page 274, the form of mortgage there given requires the mortgage to "recite the nature and amount of indebtedness." And in section 14, chapter 95, Rev. Stat. 1874, page 713, notices of sales of real estate pursuant to powers are required to state "the amount of indebtedness the instrument was given to secure," and "the amount claimed to be due." A statement upon the record of the amount claimed to be due informs all what lien is claimed. They know what they must contest, or subject to what they must take, in subsequently dealing with the property. It prevents secret conspiracies between mortgagors and mortgagees as to the fact and amount of indebtedness to the prejudice of subsequent purchasers and creditors, by compelling them to at once make known the real claim. In some instances, subsequent dealers with mortgaged property could not have information from the holders of indebtedness secured by mortgage, because they could not be found,—as in the case of negotiable securities running for a long time, and negotiated many times before maturity; and it might often be, as in the instance before us, perilous to rely on the word of the mortgagor. Undoubtedly, as between mortgagor and mortgagee, and as to persons having actual notice of the facts, both at common law and under our statute, a deed absolute on its face may be held to be a mortgage; but such cases are totally unaffected by our registry laws, and can not therefore have the slightest analogy to the present case.

It may also be well to observe that the present case is in nowise analogous to cases wherein the debt is described by reference to another instrument. In those cases there is only the labor of going to the other instrument, where full and reliable information can be attained. It is fixed, and beyond evasion or perversion. But that is not the case where the

reference is to an individual whose interest may be to mis-
represent the truth, or who may not, with reasonable efforts,
be found. A note for one amount as well as for another
will answer the description here, and this note might have
been lawfully negotiated and transferred many times before
maturity, and its holder then not have been traceable except
at a labor and expense beyond any benefit to be derived from
the knowledge he could impart. To hold this sufficient would,
in cases that may readily and not unreasonably be conceived,
practically prohibit subsequent parties from having anything
to do with the property.

*Babcock* v. *Lisk,* 57 Ill. 327, and *Farrar* v. *Payne,* 73 id.
82, cited and relied upon by counsel for appellant, are clearly
distinguishable in principle from the present case. In the
first named case it was simply a question of construction
whether $500, named as the consideration for executing the
mortgage, was a part of the sum secured by the mortgage,
and it was held that it was,—that by proper construction of
the language employed the mortgage was expressly to secure
the payment of this sum, and also the sum of $70, evidenced
by a promissory note. In the other case, the amount of the
note ($654) was given, and the only objection was that it
was not stated when it would become due, as to which, quite
obviously, considerations different from those applicable to a
failure to state the amount of indebtedness would be appli-
cable.

The burden was upon appellant to prove actual notice of
the amount of his claim, if that was relied upon, at the time
Battenhousen purchased. Without discussing the question
attempted to be raised in argument by counsel for appellant,
whether the evidence of Martha Battenhousen was admissible,
we are clear no actual notice was proved, and that Batten-
housen is shown to have been a purchaser in good faith, for
value. And we are also of opinion that the record does not
disclose sufficient evidence of subsequent actual knowledge

at a time when he could have legally avoided making any of the back payments. There is evidence that there was not actual notice of appellant's claim until the service of summons in this case, and the proof shows the notes for the deferred payments were assigned before maturity.

The judgment is affirmed.

*Judgment affirmed.*